IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHN EDGAR McMANUS,

      Plaintiff,

v.                                                                 1:15-cv-00375-RB-LF

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

      Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION ON
MOTION TO REVERSE AND REMAND**

THIS MATTER comes before the Court on plaintiff John Edgar McManus's Motion to

Reverse and Remand (Doc. 21), which was fully briefed March 14, 2016.  Pursuant to 28 U.S.C.

§ 636, the Honorable Robert C. Brack referred this matter to me for a recommended disposition.

Doc. 19.  Having carefully reviewed the parties' submissions and the administrative record, I

recommend that the Court GRANT Mr. McManus's motion.

## I.     Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final

decision[1] is supported by substantial evidence and whether the correct legal standards were

applied.  *Maes v. Astrue,* 522 F.3d 1093, 1096 (10th Cir. 2008).  If substantial evidence supports

the Commissioner's findings and the correct legal standards were applied, the Commissioner's

decision stands, and the plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116,

1118 (10th Cir. 2004).  "The failure to apply the correct legal standard or to provide this court

---

[1] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which
generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart,* 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted).  The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley,* 373 F.3d at 1118.  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.*  While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart,* 399 F.3d 1257, 1262 (10th Cir. 2005).  "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

**II.     Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process.  20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the evaluation process, the claimant must show:

2

(1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe

medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is

expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the

Listings[2] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or

her "past relevant work."  20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399

F.3d at 1260–61.  If the claimant cannot show that his or her impairment meets or equals a

Listing but proves that he or she is unable to perform his or her "past relevant work," the burden

of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform

other work in the national economy, considering the claimant's residual functional capacity

("RFC"), age, education, and work experience.  *Id.*

### III.     Background and Procedural History

Mr. McManus alleged that he became disabled at the age of 57.  AR 138, 145.[3]  While

his application for disability benefits was pending, he turned 62, and applied for Social Security

retirement benefits.  AR 54.  He is currently 65 years old and resides with his wife.  AR 138,

145–46.  He completed high-school and attended one year of college.  AR 208.  He has prior

work experience as a tile setter, tractor operator, and as a chef's helper.  AR 54, 70.  Mr.

McManus filed applications for disability insurance benefits and supplemental security income

on October 29, 2010—alleging disability since January 1, 2008 due to problems with his right

femur, nerve damage in his back and spine, arthritis in his right arm, multiple concussions,

depression, anxiety, diabetes, high blood pressure, high cholesterol, heart problems, frequent

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Documents 14-1 through 14-26 comprise the sealed Administrative Record ("AR").  When citing the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than the CM/ECF document number and page.

urination, and vision problems due to diabetes.  AR 138–44, 145–54, 207.  The Social Security

Administration denied his claims initially on March 8, 2011.  AR 84–88.  After the initial denial,

Mr. McManus reported additional diagnoses of a deviated septum, sleep apnea, and gout.  AR

286, 305.  The Social Security Administration denied his claims on reconsideration on May 25,

2011.  AR 89–95; Doc. 14-2 at 1.  Mr. McManus requested a hearing before an administrative

judge ("ALJ").  AR 96–103.  On November 26, 2012, Mr. McManus reported that he had had

"multiple heart attacks."  AR 314.  On April 4, 2013, ALJ Ann Farris held a hearing.  AR 44–74.

      The ALJ issued her unfavorable decision on June 14, 2013.  AR 21–37.  At step one, the

ALJ found that Mr. McManus had not engaged in substantial, gainful activity since January 1,

2008.  AR 26.  Because Mr. McManus had not engaged in substantial gainful activity for at least

twelve months, the ALJ proceeded to step two.  AR 27.  At step two, the ALJ found that Mr.

McManus suffered from the following severe impairments:  fracture of the right thumb, obesity,

an ileostomy in 2012, generalized anxiety disorder, and a communication disorder not otherwise

specified.  *Id.*  At step three, the ALJ found that none of Mr. McManus's impairments, alone or

in combination, met or medically equaled a Listing.  AR 28–29.  Because the ALJ found that

none of the impairments met a Listing, the ALJ assessed Mr. McManus's RFC.  AR 29–35.  The

ALJ found that:

> [C]laimant has the residual functional capacity to perform medium work as
> defined in 20 CFR 404.1567(c) and 416.967(c) except he can occasionally pinch,
> and he is limited to short simple instructions.[4]

AR 29.

---

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or
carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 404.1567(c), 416.967(c).

Case 1:15-cv-00375-RB-LF   Document 29   Filed 09/09/16   Page 5 of 15

At step four, the ALJ concluded that Mr. McManus was unable to perform any of his past relevant work.  AR 35–36.  At step five, the ALJ found Mr. McManus was not disabled, concluding that he still could perform jobs that exist in significant numbers in the national economy.  AR 36–37.

On November 14, 2014, the Appeals Council denied Mr. McManus's request for review.  AR 7–10.  Mr. McManus requested and received a 30-day extension of time to file his appeal to this Court.  AR 1–2.[5]  Mr. McManus timely filed his appeal to this Court on May 4, 2015.  Doc. 1.

### IV.     Mr. McManus's Claims

Mr. McManus raises several arguments for reversing and remanding this case:  (1) the ALJ failed to perform a function-by-function analysis in formulating his RFC; (2) the ALJ failed to assign weight to the opinion of his treating physician and other medical source opinions; (3) the ALJ's RFC determination was not supported by substantial evidence; (4) the ALJ used the wrong legal standard when evaluating his symptoms, including pain; (5) the ALJ failed to provide specific reasons and evidence to support her credibility determination; and (6) the ALJ failed to develop the record.  I find that the ALJ failed to perform a proper function-by-function analysis and failed to assign weight to the treating physician's opinion and other medical source opinions.  Because I recommend the Court remand based on these legal errors, I do not reach Mr. McManus's other claims of error as they "may be affected by the ALJ's treatment of this case on remand."  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

---

[5] The Appeals Council granted Mr. McManus 30 days from the date he received the letter granting the extension to file his appeal to this Court.  AR 1.  The 30 days began running five days after the Appeals Council mailed the letter on March 31, 2015.  *Id.*

5

### A.  The ALJ failed to conduct a proper function-by-function assessment.

Mr. McManus argues that the ALJ failed to perform a proper function-by-function

assessment before determining that he could perform medium-exertion work.  Doc. 21 at 7.

Specifically, Mr. McManus argues that the ALJ erred in finding he could perform medium work

with occasional pinching without first making findings about his exertional limitations based on

the seven strength demands of sitting, standing, walking, lifting, carrying, pushing, and pulling.

Doc. 21 at 7–8.[6]  The Commissioner erroneously claims that no specific function-by-function

analysis is necessary because the ALJ limited Mr. McManus to "medium" work, which contains

its own definitional limitations.  Doc. 25 at 7–8.  This argument is not legally sound.

Step Four of the sequential evaluation process is comprised of three phases.  *Winfrey v.*

*Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual
> function capacity (RFC), . . . and in the second phase, he must determine the
> physical and mental demands of the claimant's past relevant work. . . .  In the
> final phase, the ALJ determines whether the claimant has the ability to meet the
> job demands found in phase two despite the mental and/or physical limitations
> found in phase one. . . .  At each of these phases, the ALJ must make specific
> findings.

*Id*. (internal citations omitted).

An "RFC determines a work capability that is exertionally sufficient to allow

performance of at least substantially all of the activities of work at a particular level."  SSR 83-

10, 1983 WL 31251, at *2.  It is a reflection of "the maximum amount of each work-related

activity the individual can perform," and the ALJ must describe the "individual's ability to

perform sustained work activities in an ordinary work setting on a regular and continuing basis."

---

[6] Mr. McManus also argues that the ALJ did not support the limitations she did find with
substantial evidence.  The Court does not reach this argument, as the ALJ may substantially
revise Mr. McManus's RFC after completing a proper function-by-function analysis.

SSR 96-8p, 1996 WL 374184, at *7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*.

An ALJ may not initially express an RFC in terms of "sedentary," "light," "medium," "heavy," and "very heavy,"—the exertional levels of work. *Id*. at *3. To ensure accuracy, "[t]he RFC assessment must *first* identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." *Id*. at *1 (emphasis added). The ALJ may express the RFC in terms of exertional levels only after performing a function-by-function analysis. *Id*.

A function-by-function assessment is the description of an "individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis." *Id*. at *7. Without this initial step "an adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have." *Id*. at *4. The ALJ is required to address "an individual's limitations and restrictions of physical strength and define [ ] the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing and pulling." *Id*. at *5. For example, "the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours." *Id*. "Each of the seven strength demands must be considered separately." *Southard v. Barnhart*, 72 F. App'x 781, 784 (10th Cir. 2003) (unpublished) (citing SSR 96-8p, 1996 WL 374184, at *3–*4).

Here, Mr. McManus argues that the ALJ made no findings about his ability to sit, stand, walk, lift, carry, push or pull. Doc. 21 at 8. The Commissioner claims that Mr. McManus is "simply incorrect" in this assertion "because the ALJ specifically limited Plaintiff to medium

work, which involves lifting up to 50 pounds occasionally and 25 pounds frequently, standing or

walking for approximately six hours in an eight-hour workday, sitting intermittently, and

frequent bending." Doc. 25 at 7–8 (citing 20 C.F.R. § 404.1567(c); SSR 83-10, 1983 WL 31251,

at *6). The Commissioner's argument has no merit.[7] The ALJ committed legal error in finding

that Mr. McManus had the capacity for "medium" work without first identifying his functional

limitations or restrictions and assessing his work-related abilities on a function-by-function

basis.[8]

### B. The ALJ failed to do a proper treating-physician analysis and failed to weigh the medical source opinions.

Mr. McManus argues that the ALJ failed to conduct the two-step legal inquiry required

for weighing the opinion of his treating physician, Dr. Jeff Beekhuizen. Doc. 21 at 9. The

Commissioner argues that the Dr. Beekhuizen's opinion is consistent with the ALJ's RFC, and

that the ALJ's failure to weigh his opinion is therefore harmless. Doc. 25 at 8–9. Mr. McManus

also argues that the ALJ failed to assign weight to other medical and non-medical opinions. Doc.

21 at 9–10. The Commissioner does not specifically address this argument, but instead

---

[7] Even if the Court were to accept the Commissioner's argument, the ALJ's finding is silent as to two of the seven strength demands: pushing and pulling.

[8] The Commissioner argues that the ALJ's RFC for medium work was consistent with the findings of examining physician Dr. Carroll, and points out that Mr. McManus told Dr. Carroll that he "could stand for an hour at a time for a total of six to seven hours in an eight-hour day; sit for one or two hours; walk for 45 minutes; and could lift 30 pounds." Doc. 25 at 3 (citing AR 541). However, as Mr. McManus points out, the ALJ merely recites Dr. Carroll's findings without adopting them or stating what weight she gave to them. Doc. 21 at 8. The Court notes that, even if the ALJ had adopted Dr. Carroll's opinion, this alone would not be an adequate function-by-function analysis. The ALJ must consider all of the evidence and "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184 at *7. There is ample evidence in the record showing limitations in Mr. McManus's ability to perform the seven strength demands of medium work, and these limitations require the ALJ to do a function-by-function analysis.

maintains that the ALJ "reasonably evaluated the other medical source opinions."  Doc. 25 at 8–11.

### 1.   The ALJ failed to do a proper treating-physician analysis.

In analyzing whether a treating physician opinion is entitled to controlling weight, the ALJ must perform a two-step process.  First, the ALJ considers whether the opinion "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record."  *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2); *Watkins*, 350 F.3d at 1300).  If the opinion meets both criteria, the ALJ must give the treating physician's opinion controlling weight.  *Id*.  To give anything less than controlling weight, the ALJ must demonstrate with substantial evidence that the opinion (1) is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques," or (2) is "inconsistent with other substantial evidence" in the record.  20 C.F.R. §§ 416.927(c)(2), 404.1527(c)(2).  "Under the regulations, the agency rulings, and our case law, an ALJ must 'give good reasons in [the] notice of determination or decision' for the weight assigned to a treating physician's opinion."  *Watkins*, 350 F.3d at 1300 (quoting 20 C.F.R. § 404.1527(d)(2), and citing SSR  96–2p, 1996 WL 374188, at *5; *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003)).

If the ALJ does not assign a treating physician's opinion controlling weight, step two of the analysis requires the ALJ to apply the six factors listed in the regulations to determine whether a treating physician's opinion should be rejected altogether or assigned some lesser weight:

1. **Examining relationship**:  more weight is given to the opinion of a source who has examined the claimant than to one who has not;
2. **Treatment relationship**:  more weight is given to the opinion of a source who has treated the claimant than to one who has not; more weight is given to the

opinion of a source who has treated the claimant for a long time over several
visits and who has extensive knowledge about the claimant's impairment(s);

3. **Supportability:** more weight is given to a medical source opinion which is
supported by relevant evidence (such as laboratory findings and medical signs),
and to opinions supported by good explanations;

4. **Consistency:** the more consistent the opinion is with the record as a whole, the
more weight it should be given;

5. **Specialization**: more weight is given to the opinion of a specialist giving an
opinion in the area of his/her specialty; and

6. **Other factors:** any other factors that tend to contradict or support an opinion.

*See* 20 C.F.R. §§ 416.927(c)(1)–(6), 404.1527(c)(1)–(6); *see also Oldham v. Astrue*, 509 F.3d

1254, 1258 (10th Cir. 2007); *Watkins*, 350 F.3d at 1301. As the first two factors make clear,

even if an ALJ determines that a treating physician opinion is not entitled to controlling weight,

the opinion still is entitled to deference. SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996); *see

also Watkins* 350 F.3d at 1300.

The ALJ need not explicitly consider and apply each and every factor to each opinion.

*Oldham*, 509 F.3d at 1258. "[N]ot every factor for weighing opinion evidence will apply in

every case." *Id*. (quoting SSR 06-03p, 2006 WL 2329939, at *5 (Aug. 9, 2006)). However, "the

record must reflect that the ALJ *considered* every factor in the weight calculation." *Andersen v.

Astrue*, 319 F. App'x 712, 718 (10th Cir. 2009) (unpublished). In addition, the ALJ must "make

clear how much weight the opinion is being given (including whether it is being rejected

outright) and give good reasons, tied to the factors specified in the cited regulations for this

particular purpose, for the weight assigned." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir.

2011) (citing *Watkins*, 350 F.3d at 1300–01).

An ALJ's failure to articulate the weight given a treating physician's opinion requires

remand. *Watkins*, 350 F.3d at 1301 ("We cannot simply presume the ALJ applied the correct

legal standards in considering [a treating physician's] opinion. We must remand because we

cannot meaningfully review the ALJ's determination absent findings explaining the weight

assigned to the treating physician's opinions.").  "Explicit findings properly tied to each step of

the prescribed analysis facilitate meaningful judicial review" and are required to avoid remand.

*Chrismon v. Colvin*, 531 F. App'x 893, 901 (10th Cir. 2013) (unpublished); *see also Robinson v.*

*Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) (Finding error where "[a]lthough it [was]

obvious from the ALJ's decision that he did not give [the treating source's] opinion controlling

weight, the ALJ never expressly stated that he was not affording it controlling weight, nor did he

articulate a legitimate reason for not doing so.").

        When an ALJ fails to apply the correct legal standard, the substantial evidence standard

of review "do[es] not apply, and such failure constitutes grounds for reversal." *Casias v. Sec'y*

*of Health & Human Servs.,* 933 F.2d 799, 801 (10th Cir. 1991) (internal citations omitted).

Because of the bar against *post hoc* rationalizations, the only possible salvage for a legally

flawed decision is a "harmless error" analysis. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir.

2004).  In reviewing Social Security cases, harmless error only applies if "no reasonable

administrative factfinder, following the correct analysis, could have resolved the factual matter in

any other way." *Id.*

        Here, the ALJ committed two legal errors in assessing the opinion of Mr. McManus's

treating physician, Dr. Jeff Beekhuizen:  she failed to state what weight she gave the opinion,

and failed to conduct the required two-step legal analysis in deciding what weight to give the

opinion.  The entirety of the ALJ's analysis of Dr. Beekhuizen's opinion is:  "I find that Dr.

Beeklmizen's [sic] opinion that the claimant is unable to do his past job in construction (Exhibit

3F), is consistent with my residual functional capacity assessment.  Vocational expert testimony

supports this conclusion."  AR 34.

The ALJ's cursory discussion of Dr. Beekhuizen's opinion is insufficient as a matter of law and erroneous as a matter of fact. The ALJ did not state what weight she gave Dr. Beekhuizen's opinion. The ALJ neither stated whether she gave Dr. Beekhuizen's opinion controlling weight, nor analyzed what lesser weight to assign using the six regulatory factors. The Commissioner admits that Dr. Beekhuizen is a treating physician, Doc. 25 at 8, but argues that the ALJ's failure to apply the proper legal test is harmless because Mr. McManus "cannot show that the outcome of his case would have been different, even if the ALJ had explicitly assigned a weight to Dr. Beeklemizen's [sic] opinion." Doc. 25 at 8–9. The Court cannot agree.

A reasonable factfinder conducting a proper treating physician analysis could find that Dr. Beekhuizen's opinion precludes Mr. McManus from doing any medium-exertion work. While both Dr. Beekhuizen and the ALJ found that Mr. McManus was unable to perform his past work, they did so for different reasons. Dr. Beekhuizen opined that Mr. McManus could not do his past work because of back problems and past injuries. AR 498. In the relevant clinical history, Dr. Beekhuizen noted that Mr. McManus had chronic lower back pain caused by degenerative disc disease. *Id.* In Dr. Beekhuizen's opinion, Mr. McManus's back injury prevented him from engaging in his past work. *Id.* As Mr. McManus points out, if the ALJ were to give Dr. Beekhuizen's opinion controlling weight, "then Dr. Carroll's opinion that the plaintiff has no back pain cannot be reconciled with it." Doc. 21 at 9.

It is unclear from the ALJ's decision why the ALJ determined that Mr. McManus was unable to do any of his past relevant work—including his past work as a tile setter. Part of the ALJ hearing about how Mr. McManus's limitations affected his ability to do past work is marked as "inaudible" on the hearing transcript. AR 71. The ALJ categorized Mr. McManus's past

12

work as a tile setter as "medium exertion and skilled." AR 35.[9]  Without explaining what

functional limitations precluded him from doing his past work, the ALJ concluded that Mr.

McManus could perform other medium work.  The ALJ did not limit Mr. McManus to unskilled

work.[10]  The Court is left to hypothesize that the ALJ may have concluded that Mr. McManus

could not do his past work because of the RFC finding limiting him to only occasional pinching.

However, without specific findings by the ALJ, the Court is left without an adequate basis for

review.  On remand, the ALJ should "make specific findings on the record" about "the mental

and physical demands of the [claimant's past relevant work] and . . . evaluate the claimant's

ability to meet those demands."  *Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir. 1996).  When

the ALJ "makes findings only about the claimant's limitations, and the remainder of the step four

assessment takes place in the VE's head, [this Court is] left with nothing to review."  *Id.*

      Dr. Beekhuizen concluded that Mr. McManus was unable to do his past work as a tile

setter due to his degenerative disc disease and back injury.  Although the ALJ failed to explain

why she determined that Mr. McManus could not do his past work, there is no indication that it

was because of Mr. McManus's degenerative disc disease and back injury.  Thus, Dr.

Beekhuizen's opinion and the ALJ's RFC are not consistent.  A finding that Dr. Beekhuizen's

opinion is entitled to controlling weight could result in a finding that Mr. McManus is incapable

of doing medium work.  The ALJ's failure to properly analyze Dr. Beekhuizen's opinion using a

---

[9]  The ALJ classified Mr. McManus's past relevant work as a tractor operator as "medium and semi-skilled" and his past work as a "helper" as "medium and unskilled."  The listing the vocational expert gave for the "helper" was 317.687-010, which is a listing for a cook's helper. *See* http://www.occupationalinfo.org/31/317687010.html; AR 70.  The ALJ erroneously referred to this job as a "tile helper."  AR 35.

[10] However, at step five, all of the jobs the ALJ found Mr. McManus capable of still performing—cleaner washer, janitor, and laundry laborer—were medium exertion and unskilled. AR 36–37.

treating physician analysis is not harmless.  I recommend that the Court remand to allow the ALJ

to do a proper treating physician analysis.

### 2. The ALJ failed to weigh the medical opinions or give reasons for the weight assigned.

An ALJ must consider and weigh every medical opinion, and give specific reasons for

the weight assigned.  20 C.F.R §§ 416.927(c), 404.1527(c).  In determining what weight to give

a medical opinion, the ALJ must apply the same six factors discussed above, and provide valid

reasons tied to the factors for the weight assigned.  *See* 20 C.F.R. §§ 416.927(c)(2)–(6),

404.1527(c)(2)–(6); *Krauser*, 638 F.3d at 1330; *see also Mounts v. Astrue*, 479 F. App'x 860,

867 (10th Cir. 2012) (unpublished) (applying factors in 20 C.F.R. § 404.1527 to consultative

psychologist's opinion).  An ALJ should apply the same factors to weigh the opinions of non-

medical sources, such as social workers.  SSR 06-03p, 2006 WL 2329939, at *5.

Here, the ALJ failed to specify the weight she gave to several opinions.  The ALJ failed

to state what weight she gave the non-medical source opinion of Brenda K. Atencio, a social

worker.  AR 34.  The ALJ also failed to state the weight she gave the medical opinions of the

State agency medical consultants.  AR 35.  The ALJ failed to state the weight she gave to the

opinion of Dr. Carroll.  AR 31, 34.  The only opinion which the ALJ explicitly assigned a weight

was the opinion of Dr. Ainsley, an opinion to which the ALJ gave "little weight."  AR 35.

Although the ALJ discussed some of the relevant factors in relation to some of the medical

opinions, the ALJ neither assigned a weight nor discussed any of the factors in relation to Dr.

Carroll's opinion, AR 31, 34, even though she seemed to rely on the opinion in determining that

Mr. McManus could perform medium work, *see* AR 31.  On remand, the ALJ must assign a

weight to each medical opinion, and must discuss the weight given each opinion using the six

factors outlined in the regulations.

## V.      Conclusion

The ALJ failed to do a function-by-function analysis and failed to properly weigh the

medical opinions.  Therefore, the ALJ failed to apply the correct legal standards.  For this reason,

I recommend that the Court GRANT Mr. McManus's Motion to Reverse and Remand (Doc. 21)

so that the ALJ may revisit Mr. McManus's RFC and how it impacts his claim of disability.  I

recommend that the Court decline to address Mr. McManus's other claims of error as they "may

be affected by the ALJ's treatment of this case on remand."  *Watkins*, 350 F.3d at 1299.

THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(C).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.

_____
Laura Fashing
United States Magistrate Judge