IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHN EDGAR McMANUS,

    Plaintiff,

v.                                                                                           1:15-cv-00375-RB-LF

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

    Defendant.

**MEMORANDUM OPINION AND ORDER ADOPTING THE MAGISTRATE
JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on Commissioner Carolyn W. Colvin's objections to the Magistrate Judge's Proposed Findings and Recommended Disposition ("PF&RD"), which were filed on September 21, 2016. Doc. 30. This matter was referred to Magistrate Judge Laura Fashing to recommend a disposition pursuant to 28 U.S.C. § 636(b). Doc. 19. Judge Fashing issued her PF&RD on September 9, 2016, recommending that the Court remand this case for further proceedings. Doc. 29. In her objections, the Commissioner argues that the magistrate judge erred in finding that the ALJ failed to conduct a proper function-by-function analysis and failed to properly analyze the medical opinions. Doc. 30 at 1. Following a de novo review of these issues, I find no error in Magistrate Judge Fashing's analysis. I therefore overrule the Commissioner's objections and adopt the magistrate judge's PF&RD.

        **I.**    **The ALJ did not perform a proper function-by-function analysis.**

In his appeal from the decision of the Commissioner, plaintiff John Edgar McManus argued that the ALJ erred in finding that he could perform medium work without first making function-by-function findings about his exertional limitations—including his ability to sit, stand,

walk, lift, carry, push, and pull.  Doc. 21 at 7–8.  In her PF&RD, the magistrate judge found that "[t]he ALJ committed legal error in finding that Mr. McManus had the capacity for 'medium' work without first identifying his functional limitations or restrictions and assessing his work-related abilities on a function-by-function basis."  Doc. 29 at 8.

The Commissioner argues that the ALJ did not err because "the ALJ specifically limited Plaintiff to "medium work," which by its definition "involves lifting up to 50 pounds occasionally and 25 pounds frequently, standing or walking for approximately six hours in an eight-hour workday, sitting intermittently, and frequent bending."  Doc. 30 at 2 (citing 20 C.F.R. § 404.1567(c); SSR 83-10, 1983 WL 31251, at *6).  However, as the magistrate judge pointed out, this argument is without merit.

> An ALJ may not initially express an RFC in terms of "sedentary," "light," "medium," "heavy," and "very heavy,"—the exertional levels of work.  [SSR 96-8p, 1996 WL 374184,] at *3.  To ensure accuracy, "[t]he RFC assessment must *first* identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis."  *Id*. at *1 (emphasis added).  The ALJ may express the RFC in terms of exertional levels only after performing a function-by-function analysis.  *Id*.

Doc. 29 at 7.

The Commissioner renews her argument that the ALJ's "RFC assessment was consistent with the findings of examining physician Dr. Carroll" and "the opinions of two reviewing physicians."  Doc. 30 at 2.  However, the ALJ did not base her decision on these grounds, and they are, therefore, impermissible post hoc rationalizations.  *See Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) ("Affirming this post hoc effort to salvage the ALJ's decision would

require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process.").[1]

The Commissioner also argues that the magistrate judge erroneously relied on *Winfrey* in deciding that the ALJ failed to conduct a proper function-by-function analysis. Doc. 30 at 2 (citing *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996)). The Commissioner suggests that a proper function-by-function analysis is only required at phase one of step four, and becomes irrelevant if the ALJ finds at step four that the claimant can no longer perform his or her past relevant work. *See id.* at 2–3. But phase one of step four is where the ALJ determines the claimant's physical and mental residual capacity (RFC). *See Winfrey*, 92 F.3d at 1023. The RFC is critical not only at step four, *see id.*, but also at step five, when the ALJ determines whether the claimant could perform other jobs that exist in substantial numbers in the national economy. *See* SSR 96-8p, 1996 WL 374184, at *4; *Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014). I agree with the magistrate judge that the ALJ erred in evaluating Mr. Heckel's RFC by failing to conduct a proper function-by-function analysis at phase one of step four.

As the magistrate judge explained, without the function-by-function analysis, "an adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have." Doc. 29 at 7 (quoting SSR 96-8p, 1996 WL 374184, at *4). The ALJ uses the function-by-function analysis to determine the RFC, which not only is used at step four to determine if a claimant can perform his past relevant work, but also at step five to determine if the claimant is able to perform other work in the national economy. 20

---

[1] And, as the magistrate judge pointed out, the ALJ failed to state what weight she gave Dr. Carroll's opinion, and never stated that she relied on the opinion in formulating the RFC. *See* Doc. 29 at 14 (citing AR 31, 34).

C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257 at 1260–61, s*ee also Hendron*, 767 F.3d at 956 ("a function-by-function analysis is also important at step 5, when the ALJ determines if there is other work that the claimant could do"). Thus, if the ALJ errs in formulating the RFC, the error necessarily taints the analysis at both steps four and five.

The Commissioner's broad statement "that any error at step four is harmless where the ALJ proceeds to step five" is without merit. *See* Doc. 30 at 2–3. All of the cases the Commissioner cites concern errors at phase two of step four—the phase in which the ALJ "must determine the physical and mental demands of the claimant's past relevant work." *Winfrey*, 92 F.3d at 1023. Contrary to the Commissioner's assertion, *Murrell* does not stand for the proposition that "any" step four errors are harmless so long as the ALJ proceeds to step five. *See* Doc. 30 at 3 (citing *Murrell v. Shalala*, 43 F.3d 1388 (10th Cir. 1994)). Instead, *Murrell* addresses a limited set of cases in which the ALJ makes "alternate-ground dispositions"—where the ALJ finds at step four that the claimant can return to his or her past relevant work, and alternately finds at step five that even if claimant could not return to his or her past relevant work, the claimant could do other jobs that exist in significant numbers in the national economy. *Id.* at 1388–89. *Murrell* and the others cases the Commissioner cites stand for the narrow proposition that an error at step four may be harmless in those cases containing alternate ground dispositions in which plaintiffs do not successfully show error at both steps four and five. *See Murrell*, 43 F.3d at 1389–90; *Martinez v. Astrue*, 316 F. App'x 819, 824 (10th Cir. 2009) (unpublished) (holding that the ALJ erred at step four in not making explicit findings about the requirements of claimant's past work, but such error was harmless because the ALJ made an alternate finding at step five that there were other jobs claimant could perform); *Wilde v. Colvin*,

2014 WL 8106123, at *2 (N.D. Okla. March 11, 2015) (unpublished) (because ALJ found that claimant could return to her past work at step four *and* alternately found that, even if she could not do so, there were other jobs she could do at step five, the Court looked at the step five analysis to determine if the ALJ's failure at step four was harmless).  Mr. Heckel's case does not involve alternate ground dispositions, and it's not clear that the ALJ's error in failing to perform the function-by-function analysis at step four had no effect on the determination of his RFC and the outcome at step five.

Finally, the Commissioner argues that the ALJ's failure to conduct a function-by-function assessment in this case was harmless because "there is no evidence that the ALJ overlooked any restrictions or limitations, and neither the Plaintiff nor the Magistrate Judge point to any credible physical limitations supported by the record but overlooked by the ALJ."  Doc. 30 at 4.  The Commissioner argues that under *Hendron*, the ALJ is not required to do a "hyper-technical function-by-function analysis."  *Id.* (citing *Hendron*, 767 F.3d at 956–57 (10th Cir. 2014)).

This case is distinguishable from *Hendron*.  In that case, there was no evidence showing a limitation in the claimant's ability to sit during the relevant time period.  *Id.* at 957.  Therefore, it was not critical for the ALJ in that case to make an explicit finding about the claimant's ability to sit.  *Id*.  The *Hendron* Court found no error because it was clear that the "ALJ considered all of the evidence" and that "correct legal standards [had] been applied."  *Id.* at 955, 957.  In this case, however, there is evidence in the record showing that Mr. Heckel has exertional limitations, and it is not clear that the ALJ considered this evidence, or that the ALJ applied the correct legal standards in assessing those limitations.

In assessing the RFC, the ALJ

> must include a narrative discussion describing how the evidence supports each
> conclusion, citing specific medical facts (e.g., laboratory findings) and

5

> nonmedical evidence (e.g., daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7.  Here, a proper function-by-function analysis was critical to making sure that the ALJ did not overlook any pertinent limitations and restrictions in formulating the RFC.  For example, there is evidence in the record indicating limitations in Mr. McManus's ability to lift.  Medical records show that Mr. McManus was treated on March 21, 2011 for right shoulder pain of a year's duration, which was accompanied by tingling and tenderness.  AR 584.  Mr. McManus reported intermittent pain exacerbated by "lifting and movement," AR 584, which the medical provider confirmed on physical exam, AR 585.  X-rays found "mild osteoarthritic changes involving the acromioclavicular joint" and "mild narrowing of the subacromial space."  AR 587.  Mr. McManus was diagnosed with bursitis.[2]  AR 585.  Mr. McManus's Adult Function Report dated April 5, 2011 stated that he has difficulty dressing and shaving because his "arm hurts" and reported that he can only lift 10 pounds with his right arm.  AR 298, 302.  Mr. McManus testified at the ALJ hearing that he could no longer lift.  AR 71.  The absence of a function-by-function analysis makes it unclear whether the ALJ adequately considered the evidence of Mr. McManus's limited ability to lift.

There is also evidence in the record indicating limitations on Mr. McManus's ability to walk.  The Commissioner and the ALJ cited Dr. Carroll's January 2011 exam for the proposition

---

[2] Bursitis is the swelling and irritation of a bursa.  A bursa is a fluid-filled sac that acts as a cushion between muscles, tendons, and bones.  Symptoms of bursitis may include joint pain, stiffness, and swelling. Medline Plus, https://medlineplus.gov/ency/article/000419.htm, last accessed on September 26, 2016.

that Mr. McManus's gait was normal and that he could ambulate without difficulty. Doc. 25 at 3; AR 31. However, the ALJ did not discuss medical records showing Mr. McManus had an antalgic gait and a foot deformity, AR 538, or that he had ongoing neuropathy in his feet, AR 845. In addition, Mr. McManus reported on his April 5, 2011 Adult Function Report that he could walk for only 20 minutes before having to stop and rest. AR 302. He further reported "having severe pain after using [his] legs." AR 304. It is not clear from the ALJ's decision that the ALJ adequately considered the evidence of Mr. McManus's limitations on walking in formulating the RFC.

Thus, unlike *Hendron*, it is not clear that the ALJ considered all of the relevant evidence or applied the correct legal standards in formulating Mr. McManus's RFC. The ALJ's decision does not show that she conducted a function-by-function analysis at all. Remand is therefore required.

## II.     The ALJ did not conduct a proper treating-physician analysis.

The Commissioner renews her argument that the ALJ's failure to do a proper treating-physician analysis is harmless. Doc. 30 at 5. The Commissioner concedes that the magistrate judge's conclusion that "[a] reasonable factfinder . . . could find that Dr. Beekhuizen's opinion precludes Mr. McManus from doing any medium-exertion work" is "one reasonable interpretation of the opinion." Doc. 30 at 6 (quoting Doc. 29 at 12). The Commissioner erroneously argues, however, that where two reasonable conclusions can be drawn from the evidence, the Court always must defer to the ALJ. Doc. 30 at 6. This deference, however, only applies when this Court is reviewing the Commissioner's decision under a substantial evidence standard. When the ALJ fails to apply the correct legal standard, that deference does not apply. *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). As the

magistrate judge explained, "harmless error only applies if '**no** reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.'" Doc. 29 at 11 (quoting *Allen*, 357 F.3d at 1145 (emphasis added)). In conceding the magistrate judge's interpretation is "one reasonable interpretation," the Commissioner concedes that a reasonable factfinder could resolve the matter in another way. Therefore, remand is required.

The Commissioner also argues that Dr. Beekhuizen's opinion that Mr. Heckel is unable to perform his past work is an opinion on an issue reserved to the Commissioner, and is therefore not entitled to controlling weight. Doc. 30 at 6. Because the ALJ did not rely on this as a basis for her decision, it is an impermissible post hoc rationalization. *See Allen*, 357 F.3d at 1142. Furthermore, this argument misses the point of the magistrate judge's decision. Dr. Beekhuizen concluded that Mr. McManus could no longer work construction "*because of* back problems and past injuries." Doc. 29 at 12 (citing AR 498) (emphasis added). Dr. Beekhuizen noted that Mr. McManus suffered from chronic lower back pain caused by degenerative disc disease. AR 498. On the other hand, the ALJ decided that Mr. McManus could not perform his prior work, but did not explain which functional limitations prevented him from performing his past relevant work— whether it was because of back problems or for some other reason. *See* AR 35–36. Thus, if the ALJ gave Dr. Beekhuizen's opinion[3]—that Mr. McManus suffered from chronic lower back pain caused by degenerative disc disease—controlling weight, this might have affected the ALJ's decision that Mr. McManus still is capable of performing other medium work, which involves

---

[3] Under the regulations, "[m]edical opinions are statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Dr. Beekhuizen's opinion speaks to Mr. Heckel's physical restrictions and what he still can do despite his impairments and is, therefore, a medical opinion.

frequent lifting of 25 pounds, standing or walking for six hours in an eight-hour day, sitting intermittently, and frequent bending.  On remand, the ALJ must conduct a proper treating physician analysis.

### III. The Commissioner waived her argument that the ALJ's failure to weigh the medical opinions was harmless error.

In her objections to the magistrate judge's PF&RD, the Commissioner argues for the first time that the ALJ's failure to assign weight to the medical opinions is harmless error.  Doc. 30 at 7.  The Commissioner did not specifically address the ALJ's failure to weigh the medical opinions in her response.  *See* Doc. 25 at 1–15.  Because the Commissioner did not argue harmless error in her response, the Court declines to address this issue raised for the first time in the objections.

"Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived."  *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996).  The "purpose of referring cases to a magistrate for recommended disposition would be contravened if parties were allowed to present only selected issues to the magistrate, reserving their full panoply of contentions for the trial court."  *Ridenour v. Boehringer Ingelheim Pharms., Inc.,* 679 F.3d 1062, 1067 (8th Cir. 2012) (citation omitted); *see also Borden v. Sec'y of Health & Human Servs.,* 836 F.2d 4, 6 (1st Cir. 1987) (Magistrate Act's intended purpose of "reliev[ing] courts of unnecessary work" would be defeated if district court "required to hear matters anew on issues never presented to the magistrate."); C. Wright & A. Miller, et al., 12 FED. PRAC. & PROC. CIV. § 3070.2 (2d ed.) ("The goal of referral to a magistrate judge is to expedite decision and remove burdens from the district judge.  That goal could be subverted—and magistrate judges undermined—if parties could hold back arguments from the magistrate judge and present them later to the district judge.").

**IT IS THEREFORE ORDERED** that the proposed findings and recommended disposition of the magistrate judge are adopted, and the objections are overruled.

**IT IS FURTHER ORDERED** that Mr. McManus's Motion to Reverse and Remand (Doc. 21) is GRANTED.

_____
UNITED STATES DISTRICT JUDGE